UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                        No. 1:22-cv-00242

TRAVELERS CASUALTY & SURETY
COMPANY OF AMERICA,

    Defendant.

**UNITED STATES OF AMERICA'S COMPLAINT
FOR BREACH OF CONTRACT, BAD FAITH, VIOLATIONS
OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT,
AND THE NEW MEXICO UNFAIR PRACTICES ACT AND JURY DEMAND**

The United States of America, through its undersigned counsel, alleges for its complaint, as follows:

### I.   Introduction

1. The United States brings this civil action to recover under Travelers Casualty & Surety Company of America's ("Travelers") "Wrap + Crime" policy for the theft of millions of dollars belonging to Ayudando and its clients—individuals that for a variety of reasons were unable to manage their own financial responsibilities. The United States also seeks to recover against Travelers for bad faith, violation of the New Mexico Unfair Insurance Practices Act, and violation of the New Mexico Unfair Practices Act because its denial of the United States' claim was unfounded and frivolous, and if the Travelers Policy does not provide coverage, Travelers misrepresented the coverage afforded.

### II.   Jurisdiction and Venue

2. Jurisdiction over this action is conferred on this Court by 28 U.S.C. § 1345.

3. Venue is proper in this District under 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claim occurred in this district.

### III.   Parties

4. The United States Marshal's Service ("USMS") is a bureau within the Department of Justice. The USMS is charged with the responsibility of, among other things, seizing assets gained by illegal means and providing for the custody, management, and disposal of forfeited assets.

5. The Complex Asset Unit ("CAU) of the Asset Forfeiture Division ("AFD") in the USMS works with USMS district offices to manage and dispose of assets that require specialized knowledge and expertise, including operating businesses, various financial instruments (such as stocks, bonds, and bank accounts), cryptocurrency, intellectual property, and entities holding commercial or high-value real property. The CAU may also assist on any asset that presents a particular challenge to the districts, and may work with the Personal Property and Real Property Units of AFD on such assets as appropriate.

6. The Social Security Administration ("SSA") is an independent agency of the United States and administers the Social Security retirement, survivors, and disability insurance programs and the supplemental security income program for the aged, blind, and disabled.

7. At all times relevant to this Complaint, Travelers was incorporated in Connecticut and was writing insurance policies to individuals and businesses in New Mexico.

### IV.   Background

A.   Ayudando Entities

8. Ayudando provided fiduciary, representative payee, guardianship, and conservatorship services. Ayudando managed its clients' funds, paid the clients' bills and living

expenses, and was to maintain the balance for the interest of their clients.

9. In connection with its business, Ayudando received benefits from the Department of Veterans Affairs ("VA") and the SSA on behalf of its clients. For these clients, Ayudando acted as a fiduciary or representative payee—receiving government benefit payments on behalf and for the benefit of the clients and paying the client's expenses.

10. Upon information and belief, Susan Harris formed the Ayudando entities.

11. Upon information and belief, Ayudando Guardians Inc. was a New Mexico non-profit formed in June 2007, that was merged into Ayudando Alpha, Inc. in December 2008. Harris was registered agent and Harris, Sharon Moore ("Moore"), and Harris's father-in-law, Lowell Harris, were the directors.

12. Upon information and belief, Ayudando Alpha, Inc., was a New Mexico non-profit formed in November 2006. Harris is registered agent and president. Lowell Harris was vice president, and Moore was secretary and treasurer.

13. Upon information and belief, Ayudando Guardians, LLC, was a New Mexico limited liability company formed in July 2004. Harris is registered agent and president. Harris signed the corporate papers as "Managing Member." Upon information and belief, there are no other members.

14. Upon information and belief, Ayudando Enterprises, LLC, "is a single member consulting business" formed in August 2004. Harris is the registered agent and manager.

15. Ayudando Advocacy, Inc., is a New Mexico non-profit formed in September 2007. Harris is registered agent and president, Moore is secretary, and Lowell Harris is a director.

16. Collectively, Ayudando Guardians, Inc., Ayudando Alpha, Inc., Ayudando Guardians, LLC, Ayudando Enterprises, LLC, and Ayudando Advocacy, Inc. are referenced as "Ayudando."

17. Ayudando described its corporate structure as follows:

> Ayudando Enterprises, LLC was established on September 1, 2004 and is a single member consulting business that provides investigative and various expert services for attorneys and others involved in care issues with nursing homes and other residential care facilities for disabled and elderly persons. It is a separate entity for reasons related to the need to keep non-profit guardianship and conservatorship issues performed by other Ayudando entities separate and distinct from the activities of the consulting business.
>
> Ayudando Guardians, LLC., was established on October 7, 2004. This limited liability company is the entity with which the New Mexico Office of Guardianship contracted for the provision of guardianship and conservatorship services. Ayudando was informed that Ayudando Guardians, LLC., as a contracting entity with the state is inappropriate because guardianship services are in the nature of nonprofit activities.
>
> Ayudando Guardians, Inc., was established at the request of the Office of Guardianship to create a nonprofit entity. However, the Office of Guardianship then reversed its position and informed Ayudando that the contract would remain with Ayudando Guardians, LLC. Ayudando Guardians, LLC., never received a nonprofit status from the IRS. As a result, Ayudando Guardians, LLC was merged with Ayudando Alpha, Inc., and no longer exists. The merger is a matter of record with the NM Public Regulation Commission.
>
> Ayudando Alpha, Inc. was established on November 22, 2006. It was established as a nonprofit entity and is a nonprofit corporation and holds IRS tax exempt status under Section 501c3 of the Internal Revenue Code. Ayudando Alpha, Inc. holds federal ID number 20-8052692. Its members are Susan Harris and Sharon Moore.

18. Ayudando operated without regard to corporate structure.

19. The sign in front of the Ayudando business premises identified itself as "Ayudando Guardians, Inc.," the defunct entity.

20. Ayudando Enterprises, LLC had a contract with the VA to provide fiduciary services to veterans.

21. SSA and Ayudando Alpha agreed that Ayudando Alpha could provide representative payee services for SSA clients pursuant to the terms set forth in Ayudando Alpha's SSA application and approval letter.

22. Ayudando Guardians, LLC had a contract with New Mexico Developmental Disabilities Planning Counsel to provide guardianship services.

23. Ayudando's employees were employed by Ayudando Enterprises, LLC in 2007, but were employed by Ayudando Alpha in 2016.

24. Harris, Moore, Harris's husband, William Harris, and Harris's son, Chris Young ("Young"), were all employees of Ayudando.

25. William Harris and Young were directors of Ayudando Alpha, Inc.

26. Neither William Harris, nor Young, had an ownership interest in any of the Ayudando entities.

27. Employee health insurance was in the name of the defunct Ayudando Guardians, Inc.

28. Ayudando Alpha had a "Pooled Charitable Trust" to provide for the collective management and distribution of the Trust Estate of various beneficiaries.

29. Ayudando had several accounts with New Mexico Bank and Trust, most of which were held by Ayudando Guardians, Inc., including the "Petty Cash Account" numbered 120100920; the "Client Reimbursement Account" numbered 616827; the "Payroll Account" numbered 6164438; the VA beneficiary accounts; and the Client Social Security Trust Account. The "Pooled Charitable Trust and Representative Payee Services" account numbered 6164404 was

held by Ayudando Alpha, Inc. Client accounts were held by Ayudando Guardians LLC, Ayudando Guardians, Inc., and sometimes, just "Ayudando Guardians."

B.      Moore's, Harris's, William Harris's, and Young's Criminal Acts

30.     Moore was Chief Financial Officer and responsible for Ayudando finances.

31.     From about November 2006 to July 2017, Moore transferred funds from New Mexico Bank & Trust client accounts to the Client Reimbursement Account, the Petty Cash Account, and to New Mexico Bank & Trust account numbered 6169064, labeled "Ayudando Guardians." The name on the Client Reimbursement Account and the Petty Cash Account was usually referenced as the then-nonexistent "Ayudando Guardians Inc." but sometimes referenced as "Ayudando Guardians LLC." The name on the "Ayudando Guardians" account was "Ayudando Guardians Inc."

32.     Moore used the funds from the Petty Cash Account and the Client Reimbursement Account to pay Ayudando operation expenses.

33.     Moore also used the funds from the Petty Cash Account and the Client Reimbursement Account to pay her own personal expenses.

34.     Moore also used the funds from the Petty Cash Account and the Client Reimbursement Account to pay for the expenses of Harris, William Harris, and Young.

35.     Moore also used the funds from the Petty Cash Account and the Client Reimbursement Account to replenish depleted client accounts.

36.     Harris was also a signatory on the Petty Cash Account and the Client Reimbursement Account and misused those funds.

37.     Harris, Moore, William Harris, and Young had a business American Express card that was to be used for business expenses, such as gas and the purchase of food and other items

required by Ayudando's clients.

38. Harris misused the business American Express card to purchase personal items and services.

39. Moore misused the business American Express card to purchase personal items and services.

40. William Harris misused the business American Express card to purchase personal items and services.

41. Young misused the American Express card to purchase personal items and services.

42. The bills for the above-mentioned business American Express cards went to Ayudando.

43. Moore paid the bills for all the business American Express cards from the Ayudando Petty Cash Account and the Client Reimbursement Account.

44. The VA required Ayudando to provide an accounting of the accounts receiving VA funds.

45. To hide the above-described illegal activities, Moore altered and forged bank statements and submitted the falsified documents to the VA.

46. On July 11, 2017, Ayudando Alpha, Inc., dba Ayudando Guardians, Inc., Harris, and Moore were indicted on 1 count of conspiracy, 10 counts of mail fraud and aiding and abetting, 9 counts of aggravated identity theft and aiding and abetting, and 1 count of conspiracy to commit money laundering. *See*, *United States of America v. Susan K. Harris, et al.*, filed in the United States District Court for the District of New Mexico, Cause No. 17-cr-1836 (hereinafter referenced as "17-cr-1836"), Doc. 2.

47. A superseding indictment was entered against Harris, William Harris, Young, and

Moore, adding 8 more counts for money laundering and aiding and abetting, and another count for conspiracy to commit money laundering. *Id.* Doc. 41.

48. On July 14, 2017, a "Post-Indictment Protective and Restraining Order Enjoining Property Subject to Forfeiture," was entered, appointing the CAU of the USMS as "the Receiver/Monitor of Ayudando [defined to include all Ayudando entities] and all financial accounts associated with Ayudando." The CAU was authorized to take possession of Ayudando financial accounts, client funds, credit cards, books, records, and the Ayudando premises. The CAU was further authorized to conduct business operations of Ayudando.

49. Moore and Harris each pled guilty to conspiracy, 10 counts of mail fraud, 1 count of aggravated identity theft, 9 counts of money laundering, and 1 count of conspiracy to commit money laundering.

50. In connection with their pleas, Harris stated that she was "President and 95% owner of Ayudando Guardians, Inc., Ayudando Guardians, LLC, Ayudando Advocacy, Inc., Ayudando Alpha, Inc., and Ayudando Enterprises, Ltd." 17-cr-1836 MF, Doc. 127 at 7.

51. Moore stated that she was "5% owner" of the same entities. *Id.*, Doc. 123 at 8.

52. These assertions are ambiguous because as set forth above, Ayudando Alpha, Inc. (incorporated 11/2006, no longer in good standing) and Ayudando Advocacy, Inc. (incorporated 9/2007, no longer in good standing) are nonprofit corporations and Ayudando Guardians, Inc. was merged into Ayudando Alpha, Inc., a nonprofit corporation, therefore, none of these entities have owners or shareholders, and Harris and Moore operated Ayudando without regard to corporate structure.

53. William Harris and Young each pled guilty to conspiracy and conspiracy to commit money laundering.

54. All interest in the assets of Ayudando Advocacy, Inc., Ayudando Alpha, Inc., Ayudando Enterprises, Ltd., Ayudando Guardians, LLC and Ayudando Guardians, Inc. was forfeited to the United States "and titled thereto is vested in the United States." *See* 17-cr-01836, Doc. 363.

### V. Travelers Wrap + Crime Policy

55. Ayudando had a Travelers crime policy in place for its SSA work that expired May 21, 2014.

56. Ayudando submitted a new application for continuation of the Travelers Policy.

57. In February 2014, Dominion Insurance Services ("Dominion") asked Harris to describe the relationships among the different Ayudando entities listed on the application.

58. Moore provided the description set forth in Paragraph 18, above.

59. Upon information and belief, Dominion shared this information with Travelers.

60. Dominion then asked Moore to "confirm if Ayudando Enterprises LLC is the same as Ayudando Enter LLC, which is the entity listed on the VA Letters . . . if Ayudando Alpha Inc is the parent company, [and whether] Ayudando Enterprises LLC is the same as 'Ayudando Enterprises, LTC. Co.'"

61. In January 2015, Dominion told Ayudando that the Travelers Crime policy "is only covering the DBA Ayudando Alpha operation. We are excluding the other DBAs and will need to add the same endorsement excluding Ayudando Alpha on the current policy. Since Ayudando Guardians, LLC is the legal [sic] we need to keep that as the first named insured."

62. Dominion and Travelers understood the Travelers Policy had to meet the SSA bonding requirements.

63. On October 9, 2012, Moore wrote to Dominion stating that SSA is requesting a

bond increase to 1.5 million dollars.

64. On May 30, 2014, Dominion e-mailed Moore stating that it "got the bond in place for the SSA . . . ."

65. Upon information and belief, Ayudando shared with Dominion, and Dominion shared with Travelers, SSA regulations mandating that Ayudando have insurance policy or bond that covered financial loss due to the actions or inactions of employees and officers of the organization. 20 C.F.R. § 404.2040a and § 416.640a.

66. The Social Security Act requires fee for service organizations to be "bonded in accordance with requirements specified by the Commissioner." 42 U.S.C. § 405 (j)(10) and § 1383(a)(2)(I).

67. The Commissioner requires that the fee for service organization be "bonded/insured to cover misuse and embezzlement by officers and employees." 20 C.F.R. § 404.2040a(a)(2) and § 416.640a(a)(2).

68. The SSA Program Operating Systems Manual GN 00506.105, effective October 24, 2011 to July 21, 2014, states that the purpose of this requirement is to protect SSA "from financial loss caused by the action or inaction of the organization, or officer(s), or an employee of the organization." POMS GN 00506.105.A

69. The current version of the SSA Program Operating Systems Manual GN 00506.105, effective July 22, 2014, states that the purpose of the bond/insurance requirements is to "protect[] the Representative Payee from financial loss caused by the action or inaction of the organization, or officer(s), or an employee of the organization." GN 00506.105.A, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0200506105.

70. On or about March 18, 2015, SSA spoke with Travelers underwriting and

confirmed that the Travelers Policy did not cover owners and officers. A representative of Travelers Underwriting indicated to SSA that he "could add something to the policy" to cover owners and officers.

71. On April 22, 2015, SSA warned Ayudando that the then current Travelers Policy was unacceptable because it did not extend coverage to crimes committed by owners and officers of Ayudando.

72. By letter dated April 22, 2015, SSA informed Ayudando that it could not "collect a fee for serving as representative payee for Social Security and Supplemental Security Income beneficiaries."

73. On August 27, 2015, based on the addition of an endorsement that purported to include coverage for compensated owners and officers, SSA authorized Ayudando to collect a fee for serving as representative payee.

74. Travelers issued a Wrap + Crime policy "Ayudando Guardians, LLC, d/b/a: Ayudando Guardians, Ayudando Enterprises, LLC, and Ayudando Alpha," policy no. 105609654, effective May 21, 2016 to May 21, 2019 ("Travelers Policy").

75. The Travelers Policy is a "claims-made" policy, providing coverage for covered claims, whenever incurred, if the claim is reported during the coverage period.

76. The USMS and others notified Travelers of the above-described losses within the policy period.

77. On July 13, 2020, the United States, as owner of the Travelers Policy, and the USMS, as the appointed "receiver/monitor," demanded coverage for the losses sustained due to the criminal acts of the four Ayudando employees.

78. Travelers denied coverage by letter dated March 23, 2021. A copy is attached as

**Exhibit 1**.

## COUNT I
## Breach of Contract

79. The United States incorporates, herein, all allegations set forth in this Complaint.

80. Travelers issued the Travelers Policy to Ayudando.

81. In exchange for the premium paid, Travelers promised to pay for the losses described herein.

82. Ayudando complied with all requirements of the Travelers Policy, including but not limited to payment of the required premium.

83. On March 23, 2021, Travelers breached the terms of the Travelers Policy when it denied coverage for the claims.

84. As the direct, natural, and proximate result of the breach of the terms of the Travelers' Policy, the United States was and continues to be damaged in an amount to be determined at trial.

85. Travelers' conduct was malicious, fraudulent, oppressive, and committed recklessly with a wanton disregard for the United States' rights, which entitles the United States to an award of punitive damages.

## COUNT II
## Bad Faith

86. The United States incorporates, herein, all allegations set forth in this Complaint.

87. There is implied in every insurance policy a duty on the part of the insurance company to deal fairly with the policyholder.

88. Fair dealing means to act honestly and in good faith in the performance of the contract.

89. Travelers must give equal consideration to its own interests and the interests of the policyholder.

90. Travelers is an insurance company engaged in the business of providing insurance in New Mexico.

91. Travelers entered a contract with Ayudando and owed a duty of good faith and fair dealing.

92. Travelers acted in bad faith and breached the covenant of good faith and fair dealing inherent in the contract when it refused to pay the United States' claim for reasons which are frivolous or unfounded.

93. Travelers acted in bad faith by failing to reasonably conduct a timely and fair investigation and/or evaluation of the claim.

94. Travelers failed to give equal consideration to the interests of the insured as it did to its own interests.

95. Travelers' failure to timely investigate, evaluate, and/or pay the United States' claim is a bad faith breach of the duty to act honestly and in good faith in the performance of the insurance contract.

96. As a direct, natural, and proximate result of Travelers bad faith, the United States has suffered and continues to suffer damages as set forth in an amount to be determined at trial.

97. Travelers' conduct was malicious, fraudulent, oppressive, and committed recklessly with a wanton disregard for the United States' rights, which entitles the United States to an award of punitive damages.

## COUNT III
### Violation of the Unfair Insurance Practices Act

98. The United States incorporates, herein, all allegations set forth in this Complaint.

99. The New Mexico Unfair Insurance Practices Act prohibits certain practices by insurance companies.

100. Travelers engaged in one or more of the following prohibited practices:

- Travelers misrepresented pertinent facts or policy provisions relating to coverages at issue.

- Travelers failed to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policy.

- Travelers failed to attempt in good faith to effectuate prompt, fair and equitable settlements of the United States' claim when liability became reasonably clear.

- Travelers compelled the United States to institute litigation to recover amounts due under policy by denying coverage when the Government made a claim for amounts reasonably similar to amounts ultimately recovered.

- To the extent that Travelers asserts any new basis for denying coverage not asserted in its March 23, 2021 letter, Travelers failed to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

101. Travelers acted knowingly and/or engages in the foregoing with such frequency as to indicate that such conduct was its general business practice.

102. The United States has suffered damages in an amount to be determined at trial.

103. Travelers has engaged in dishonest conduct and in conduct that entitles the United States an award of punitive damages.

104. Travelers engaged in willful conduct entitling the United States to an award of attorneys' fees.

## COUNT IV
### Violation of the Unfair Practices Act

105. The United States incorporates, herein, all allegations set forth in this Complaint.

106. There was in force in this state a law prohibiting a person selling insurance from

engaging in unfair or deceptive trade practices.

107. An unfair or deceptive trade practice is an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale of an insurance policy that may, tends to or does deceive or mislead any person.

108. Travelers engaged in the following conduct in violation of the Unfair Practices Act:

- Travelers represented that the Travelers Policy provided coverage for the acts of owners and officers of the insured.

- Travelers offered the Travelers Policy with the intent not to provide the coverage requested and promised.

- Travelers used exaggeration, innuendo, or ambiguity as to a material fact or failed to state a material fact to deceive.

- Travelers stated that the Travelers Policy included rights, remedies, or obligations that it does not include.

- Travelers failed to deliver the insurance policy contracted for.

109. Travelers engaged in this conduct knowingly or without exercising reasonable due diligence.

110. The United States was deceived by one or more of Travelers' unfair or deceptive trade practices.

111. The United States was damaged by Travelers' deception in an amount to be proven at trial.

112. Travelers' violations of the Unfair Practices Act entitle the United States to costs and attorneys' fees.

113. Travelers' violations of the Unfair Practices Act were willful and entitles the United States to treble damages or, in the alternative, an award of punitive damages.

WHEREFORE, the United States prays that the Court enter judgment in favor of the United States and award to the United States:

1. The United States actual damages;

2. Punitive damages as allowed by law;

3. Treble damages as allowed by law;

4. Attorney's fees as allowed by law; and

5. Pre and post judgment interest;

The United States further prays for such additional relief as the interests of justice may require.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the United States demands a trial by jury in this action of all issues so triable.

    Respectfully submitted,

    FRED J. FEDERICI
    United States Attorney
    District of New Mexico

    *DRAFT DRAFT DRAFT*
    RUTH F. KEEGAN
    Assistant United States Attorneys
    201 Third Street, NW, Suite 900
    Albuquerque, NM 87102
    (505) 346-7274
    (505) 346-7205 Facsimile
    ruth.f.keegan@usdoj.gov