**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                                                   **No. 22-cv-00242 DHU/JHR**

**TRAVELERS CASUALTY & SURETY
COMPANY OF AMERICA,**

      **Defendant.**

<u>**MEMORANDUM OPINION AND ORDER GRANTING  IN PART
TRAVELERS' MOTION TO COMPEL DISCOVERY
AND FOR EXTENSION OF TIME**</u>

Pending before the Court is Defendant Travelers' Casualty and Surety Company of America's Motion to Compel the United States of America to Fully Respond to Certain Interrogatories and for and Extension of Time to Compel Responses to Other Interrogatories. [Doc. 70]. The United States filed a response in opposition [Doc. 75], and Travelers replied [Doc. 79].

Having considered the parties' submissions and the relevant law, the Motion to Compel is granted in part and denied in part regarding the interrogatory responses and granted regarding the request for an extension of time.   All the United States' general objections are overruled except for the premature objection pertaining to the contention interrogatories (nos. 2, 3, 4, 15, and 16). All specific interrogatory objections are overruled except for interrogatory 14 pertaining to the Social Security Program Operations Manual. The United States must provide supplemental interrogatory responses in compliance with this Order.

### I.        BACKGROUND

Ayudando entities served as court-appointed guardians and representative payees for Social Security recipients. [Doc. 44, at p. 4]. After its employees were convicted for embezzling

client funds, the United States seized Ayudando's assets. *Id.* Ayudando had a Wrap + Crime insurance policy from Travelers, and the United States demanded Travelers cover Ayudando's client fund loss resulting from the criminal proceedings. *Id.* at 5. Travelers denied coverage and the United States sued. *Id.* The United States asserts claims against Travelers under breach of contract, bad faith, and the New Mexico Unfair Practices and Insurance Practices Acts. *Id.*

Travelers served the United States with the instant interrogatories on December 5, 2023. [Doc. 70, p. 2]. After multiple extensions, the United States served Travelers its responses and objections on March 7, 2023. *Id.* Travelers sent a letter to the United States on March 17, 2023, "in which it agreed in good faith to limit certain of the Interrogatories and raised issues with the United States' baseless objections." *Id.* at 3. The parties resolved a few disputes after conferring on March 30, 2023. *Id.*

The United States objects to most of Travelers' interrogatories with both general and specific objections. Travelers organizes its motion first by categories of general objections: vague and ambiguous for use of clearly defined terms (numbers 3, 4, 7, 9, 10, and 13); contention interrogatories (numbers 2, 3, 4, 15, and 16); not in accordance with the Federal Rules of Civil Procedure or the Scheduling Order (numbers 2, 3, 4, 15, and 16); overbreadth based on "all facts" or "relevant time period" (numbers, 7, 9, 10, and 13); and work product (numbers 2, 3, and 4). *Id.* at 5-12. Travelers next outlines the specific interrogatories to which the United States objects. *Id.* at 13-23 (numbers 4, 7, 9, 10, 14, 15, and 16). The United States responds in an interrogatory-by-interrogatory fashion requesting the Court sustain its objections. *See* [Doc. 75]. Travelers also requests an extension of time to move to compel the United States to respond to interrogatory numbers 1, 5, 6, 8, 11, 12, and 17, the interrogatories for which the United States agrees to supplement its responses.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b)(1) governs the broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Discovery is "designed to help define and clarify issues." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (internal citation omitted). A court must limit discovery if it determines that the proposed discovery exceeds the parameters of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(iii). A court is not "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *Zuniga v. Bernalillo Cnty.*, No. CIV. 11-877 RHS-ACT, 2013 WL 3328692, at *3 (D.N.M. Mar. 21, 2013) (citing *McGee v. Hayes,* 43 Fed. Appx. 214, 217 (10th Cir. 2002)). Discovery is thus "not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Id.* (citing *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1520 (10th Cir. 1995)).

Rule 33 provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). A responding party may object with specificity to an interrogatory. Fed. R. Civ. P. 33(b)(4). Rule 33 also instructs that an interrogatory asking for "an opinion or contention that relates to fact or the application of law to fact" is not objectionable. Fed. R. Civ. P. 33(a)(2). Opinion and contention interrogatories are used routinely in discovery. Fed. R. Civ. P. 33 (2007 Amendment).

### III.   ANALYSIS

For the sake of efficiency, the Court will follow Travelers' structure and address the categories of general objections first and then turn to the specific interrogatory objections (which also contain general objections).

**A. General Objections.**

1. <u>The Court overrules the United States' general objection of "vague and ambiguous for use of clearly defined terms."</u>

The United States objects to interrogatories 3, 4, 7, 9, 10, and 13 as "vague and ambiguous" premised on how Travelers defines common terms used in its interrogatories. [Doc. 70, p. 5]. The United States repeatedly objects to the terms "Principals[1]," "Claim[2]," "Scheme[3]," "Loss[4]" and "Losses," and "Policies[5]." *See* [Doc. 70-2]. Travelers contends that the United States disagrees with or dislikes the terms instead of failing to grasp their meaning. [Doc. 70, p. 6].

The United States has a duty to exercise reason and common sense to impute ordinary definitions to terms used in the interrogatories. *See Holland v. GMAC Mortg.*, No. CV 03-2666-CM-DJW, 2005 WL 8160383, at *3 (D. Kan. Mar. 7, 2005). The Court finds it unnecessary to analyze each of Travelers' definitions to determine on which side of the vague/ambiguous line each definition falls. *See OptumCare Mgmt., LLC v. Gutierrez-Barela*, No. CV 20-474 RB/SCY, 2023 WL 1416876, at *1 (D.N.M. Jan. 31, 2023). The Court does not see how Travelers'

---

[1] "11. 'Principals' mean Harris, W. Harris, Moore, and Young." [Doc. 70-1, p. 2].
[2] "13. 'Claim' means the insurance claim that You submitted to Travelers arising out of the alleged actions of the Principals." *Id.*
[3] "15. 'Scheme' means the alleged theft by the principals that purportedly caused the loss and which is the subject Claim." [Doc. 70-1, p. 3].
[4] "17. 'Loss' and 'Losses' mean the losses You contend were sustained as result of the Scheme." *Id.*
[5] "7. 'Policies' means the ten insurance policies issued by Travelers to Ayudando Guardians, LLC between the year of 2009 and 2016, with corresponding policy numbers and policy periods provided in paragraph 145 of Travelers' Answer [Doc. 7]." [Doc. 70-1, p. 2].

definitions run afoul of the ordinary or common meanings of the general terms "policies," "loss," "claim," "scheme," or "principal." The Court has reviewed Travelers' definitions and does not interpret them as vague or ambiguous. The United States' distaste for Travelers' definitions is not akin to misunderstanding. *See* [Doc. 70, p. 6]. However, if absolutely necessary the United States may include its own *reasonable* definition to clarify its response. *See High Point SARL v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM, 2011 WL 4036424, at \*13 (D. Kan. Sept. 12, 2011). The Court overrules this general objection.

2. <u>The Court overrules the United States' general objection of overbroad contention interrogatories because Travelers appropriately rephrased the interrogatory.</u>

The United States objects to interrogatories 7, 9, 10, and 13 as overbroad based on the phrases "all facts" or "in detail" and the lack of a specified time period. Travelers offered to limit these interrogatories to the "material and principal facts" instead of "all facts" and identify a relevant time frame. [Doc. 70, p. 12]; [Doc. 70-3].

A contention interrogatory asks a party to state what it contends, all facts upon which it bases a contention, or how the law applies to the facts. *Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 448 (D. Utah 2020); *Johnson v. Sw. Pub. Serv. Co.*, No. CV 11-413 JP/GBW, 2011 WL 13277506, at \*3 (D.N.M. Dec. 13, 2011). Contention interrogatories seek to clarify and narrow the issues or the scope of a party's claims. *Johnson*, 2011 WL 13277506, at \*3 (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)). Courts have acknowledged that contention interrogatories may be "tedious" and warrant "special treatment," but are nonetheless permissible and warrant a response so long as they seek non-privileged information. *Smash Tech*, 335 F.R.D. at 448 (citing *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 19 (D.D.C. 2017)); *Lucero*, 240 F.R.D. at 594 ("While some courts have criticized the use of contention interrogatories, no court has categorically prohibited their use in all cases").

A court may limit impermissibly expansive contention interrogatories. Contention interrogatories which request "every fact and document" or "all facts" are objectionable. *See Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000). It is also impermissible for a contention interrogatory essentially to require a narrative account of the opposing party's case or track the majority of its allegations. *Lucero*, 240 F.R.D. at 594 (internal citation omitted). However, a contention interrogatory may inquire into the "material or principal facts that support a party's contentions." *Id.*; *see also Steil*, 197 F.R.D. at 447.

The Court agrees with Travelers that a party may seek the "material and principal facts" supporting its opponent's claim. The Court views Travelers' good faith offer to limit its contention interrogatories as a legitimate attempt to avoid Court intervention, although the United States chose to reject the limitation. The Court thus treats Travelers' limitation as mooting the live controversy on this point.  The Court therefore overrules this general objection and the United States must respond to the revised contention interrogatories requesting the "principal and material" facts.

3.  <u>The Court sustains the United States' general objection that the contention interrogatories are premature at this time.</u>

The United States objects to interrogatories 2, 3, 4, 15, and 16 as premature contention interrogatories that are not presently ripe to answer. [Doc. 70, p. 7]. Travelers says responses are proper now because a substantial amount of discovery has already occurred and present responses would clarify the issues, narrow the scope of the dispute, and help settlement discussions. [Doc. 70, p. 10].

The Federal Rules of Civil Procedure permit contention interrogatories with the caveat that "the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2).

Consequently, many courts do not require a response to contention interrogatories until the end of discovery is in sight unless the proponent demonstrates why the responses are necessary sooner. *Smash Tech*, 335 F.R.D. at 448-49 (ordering contention interrogatory responses within thirty days after the close of fact discovery because the respondents "need the benefit of fact discovery" to "provide a useable response").

The Court agrees with the United States that the present posture of the case is not conducive to meaningful responses to contention interrogatories. The Court notes that discovery on coverage issues does not terminate until March 29, 2024. *See* [Doc. 84]. Discovery only recently resumed after a months-long stay expired on November 6, 2023. *See* [Doc. 90]. Furthermore, cross motions for partial summary judgment on coverage await resolution. *See* [Doc. 94, 95]. Within this timeline, contention responses are likely to be most useful if they are informed by earlier factual responses. Therefore, the Court orders the United States to respond to contention interrogatories 2, 3, 4, 15, and 16 no later than sixty (60) days prior to the close of discovery.

4. <u>The Court overrules the United States' general objection that the interrogatories invade opinion work product.</u>

The United States objects to interrogatories 2, 3, and 4 on the basis of attorney opinion work product privilege. [Doc. 70, p. 12]. The United States specifically challenges demands for the legal authority upon which the United States hinges its claims. *See id.* Travelers reminds that, per its good faith letter, it does not seek the United States' case law or research, but rather "the application of the facts of this case to law, which is permissible under the Federal Rules." *Id.* (citing Fed. R. Civ. P. 33(a)(2)).

The Court agrees with Travelers that, so long as the interrogatory does not ask a question of "pure law," it is allowed to "ask[] for an opinion or contention that relates to . . . the application of law to fact." *See* Fed. R. Civ. P. 33(a)(2) (1970 Amendment); *see Larragoite v. City of*

*Albuquerque,* No. CV981545JCLFGACE, 2002 WL 35650082, at *3 (D.N.M. Feb. 8, 2002) ("not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product"). Travelers clarified that it does not seek the United States' research file or key cases. [Doc. 70, p. 2]; [Doc. 70-3]. The Court therefore overrules the United States' objection and the United States must respond to these interrogatories.

5.  <u>The Court overrules the United States' general objection that the interrogatories are not in accordance with the Federal Rules of Civil Procedure or the Scheduling Order.</u>

The United States objects to interrogatories 2, 3, 4, 15, and 16 because it believes they are "not in accordance with the Federal Rules of Civil Procedure or this Court's Scheduling Order." [Doc. 70, p. 11]. The United States ties this objection to its initial disclosures, stating "[t]he United States provided its initial disclosures, including describing categories of documents that it may use to support its claims and defense." *Id.* Travelers objects to this reasoning, citing the rules of civil procedure allowing parties to ask questions outside the scope of initial disclosures. *Id.*

The rules of civil procedure clearly allow parties to propound discovery on "any nonprivileged matter that it is relevant to any parties claim or defense" and proportional to the case. Fed. R. Civ. P. 26(b)(1). This broad rubric applies to all discovery, including interrogatories and requests for production. Travelers is thus on the right track that the rules of civil procedure allow interrogatories to ask about damages in addition to the required initial disclosure on damages. *See* [Doc. 70, p. 11] (internal citation omitted). Since the United States fails to provide any authority to evade the general scope of discovery, the Court overrules this general objection and orders the United States to answer.

**B.   Specific Interrogatory Objections.**

1.   <u>The Court overrules the United States' specific objections to Interrogatory No. 4.</u>

The United States objects to interrogatory 4, which asks the United States to identify the material and principal facts (as limited in the good faith letter) and legal basis for the United States' contention that Exclusion C of the Policy does not exclude coverage. [Doc. 70, p. 13]. Exclusion C concerns "losses caused by owners of the insured." *Id.* The United States objects that "it is Travelers' burden to prove the policy exclusions apply." *Id.* In support, the United States cites an unreported case stating that it is the insurer's burden to show that a policy exclusion covers a loss. [Doc. 70-2, p. 5]. Travelers rebuts that this framing misunderstands the interrogatory: "this interrogatory does not ask the United States to explain why the exclusion applies, but just the opposite; that is, the basis of the United States' belief that the exclusion does *not* apply." [Doc. 70, p. 13] (emphasis added). Travelers also notes that if the United States' position that a party could object based on not having the burden of proof were taken to its logical end, "discovery would seldom occur." *Id.*

The Court agrees with Travelers on all fronts. The United States' case essentially hinges on Exclusion C not applying to exclude coverage for its loss. The United States employs an ineffective tactic which shifts the framing and burden of coverage exclusion in order to evade responding to discovery. Were this to succeed, it indeed would preclude discovery in similar situations. The Court is not persuaded and therefore overrules the United States' specific objection to interrogatory 4 and orders the United States to supply an appropriate response.

6.   <u>The Court overrules the United States' specific objections to Interrogatory No. 7.</u>

The United States objects to interrogatory 7, which requests information "regarding fraudulent or dishonest conduct committed by Harris, W. Harris, Moore, and Young, other than

the conduct that the United States is basing its claim including the date on which any of the Ayudando Entities learned of the conduct, the person discovering the conduct, and the amount of money involved." [Doc. 70, p. 13-14]. The United States makes two specific objections: (1) irrelevant and not proportional because any "unrelated fraudulent acts" are immaterial and outside the scope of the time period; and (2) ambiguous, vague, and exceeds the scope of discovery because it is unclear to whom the terms "the United States of America" and "its" are intended to refer in Travelers' definitions[6]. [Doc. 70-2, p. 7].

Travelers counters that this information is directly relevant to its defenses under Condition D.4 of the Policy, which terminates the crime policy for an employee when management becomes aware of dishonest or fraudulent activity. *Id.* Travelers explains that had these individuals acted fraudulently or dishonestly, "the Policy could have terminated as to that individual prior to the actions of such employee that form the basis of the United States' claim." *Id.* at 14-15. Travelers clarified in its good faith letter that "its" refers to the United States but does not ask that the United States contact every officer, employee, or attorney. *Id.* at 15. Rather, Travelers says that Rule 33 requires the United States to produce information available to it by reasonable effort, which the United States did not do, instead resorting to arguing that the information sought is "equally available to Travelers." *Id.* at 16-17.

The Court agrees with Travelers. As an initial matter, the Court does not accept the United States' objection that the requested information is equally available to Travelers. *See* [Doc. 70-2, p. 7]. This improperly shifts the burden to Travelers and contrary to precedent in this District. *See United States v. Hopkins*, No. CIV 11-0416 JB/CG, 2012 WL 6846400, at *5 (D.N.M. Dec. 22,

---

[6] Travelers defines "You, Your, Yours, United States, and Government" as "the *United States of America*, in *its* own capacity, and as court-appointed receiver for the Ayudando Entities, and any of *its* officers directors, representatives, employees, attorneys, and agents." [Doc. 70-1, p. 1].

2012); *XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *24 (D.N.M. Apr. 1, 2016) ("Simply put, if a person, corporation, or a person's attorney or agent can pick up a telephone and secure the document, that individual or entity controls it"). Travelers is correct that the United States cannot skirt its duty to make reasonable efforts to secure the information by pointing to Travelers do that work. *See* [Doc. 70, p. 16]. The Court overrules the United States' objection in this regard and orders the United States to contact its agents and representatives who possess or control information responsive to this request.

The Court also agrees with Travelers that the question of whether Harris, Harris, Moore, and Young engaged in fraudulent or dishonest conduct prior to the incidents giving rise to this lawsuit is relevant because it bears on Travelers' coverage defense at the heart of this dispute. *See* [Doc. 70, p. 15]. Indeed, policy termination due to bad acts prior to the underlying incident would change the landscape of the lawsuit for both parties. The Court has reviewed the disputed terms and finds them sufficiently clear and precise in context of the interrogatory. The Court thus overrules the United States' objections and orders it to respond to this interrogatory.

7. <u>The Court overrules the United States' specific objections to Interrogatory No. 9.</u>

The United States specifically objects to interrogatory 9, which asks the United States to "identify the Ayudando Entity for which You contend each of the Principals were Employees" along with supporting dates and facts. [Doc. 70-1, p. 6]. In its good faith letter, Travelers limited the scope of this interrogatory to specifically asking which Ayudando entity employed Harris, W. Harris, Moore, and Young. [Doc. 70, p. 18]; [Doc. 70-3, p. 8]. The United States responded that these individuals were employed by "the insured as defined in Travelers policy, which includes each of the listed entities set forth in Item 1 on the Declarations page of the policy," and quoted

portions of Item 1. [Doc. 70, p. 18]; [Doc. 70-2, p. 8]. The United States also references documents responsive to request for production 2. [Doc. 70, p. 18].

Travelers believes this response falls short for three reasons. *Id.* First, the Travelers decries that the United States ducked the question by reference to Item 1 on the Declarations page rather than directly name the Ayudando entities it contends employed Harris, W. Harris, Moore, or Young. *Id.* Second, while the United States "elect[ed] to produced [sic] documents pursuant to Rule 33(d) in response to this request," Travelers complains that the United States did not provide enough detail to enable Travelers to readily find the responding document. *Id.* at 18-19. Indeed, the United States' response to request for production 2 includes over a million pages of documents, *id.* at 19 (identifying bates stamped documents USA 00000449-USA01793413), a far cry from the "sufficient detail" required to enable Travelers to locate and identify the pertinent records. *See* Fed. R. Civ. P. 33(d). Finally, Travelers complains that the United States fails to "affirmatively state" whether it is withholding information. [Doc. 70, p. 19].

The Court agrees with Travelers. Interrogatory answers "must be responsive, full, complete and unevasive" and "[m]aterial outside the answers and their addendum ordinarily should not be incorporated by reference." *Pilling v. Gen. Motors Corp.*, 45 F.R.D. 366, 369 (D. Utah 1968). The United States' response fails to meet the standard. Referring to the insureds listed on "Item 1" of the Declarations page and partial quotation of that page requires substantial deciphering to parse which entities the United States contends employed the individuals. "You figure it out" is not a proper response to a contention interrogatory.

The same logic applies to the document production the United States incorporates by reference. The United States must point to specific bates-stamped documents instead of the present document dump of over a million documents. *See* [Doc. 70, p. 19]; *See Lucero v. Valdez*, 240

F.R.D. at 595 ("Simply referring a party to a mass of records . . . is not a sufficient response"); *see also Bowoto v. Chevron Corp.*, 2006 WL 2507454, at *3 (N.D. Cal. 2006) ("if defendants wish to rely on Rule 33(d) with such voluminous production [53,000 pages], they must explicitly describe the content of the relatively few documents that contain the requested information, and must describe the content of the remaining documents."); *O'Connor v. Boeing North American, Inc.,* 185 F.R.D. 272, 277 (C.D.Cal.1999) ("wholesale dumping of documents" does not satisfy Rule 33(d)). Finally, the Court agrees that if the United States withholds documents pursuant to its objections, it must state so. Fed. R. Civ. P. 26(b)(5)(A). The Court overrules this specific objection and orders the United States to answer.

8.  <u>The Court overrules the United States' specific objections to Interrogatory No. 10.</u>

The United States objects to interrogatory 10, which asks for information about all persons involved in the investigation of the "facts underlying the Scheme, the Loss, and the Claim," including dates, role, and results of the investigation. [Doc. 70-2, p. 9]. The United States contends that this interrogatory is not relevant to any claim or defense nor proportional to the needs of the case. [Doc. 70, p. 19]. The United States believes this insurance coverage action has no overlap with the criminal convictions secured from the unlawful conduct. *See id.* In that vein, the United States also says that the criminal convictions foreclose the need for any further discovery on the facts underlying. *Id.*

Travelers argues that "[a]ny investigation into the exact acts for which the United States seeks coverage is clearly relevant to this action." [Doc. 70, p. 20]. Travelers thus believes that it is entitled to discover the United States' information on the scope and timeline of the criminal acts giving rise to this coverage action. *See id.*

The Court agrees with Travelers and views the factual basis of the criminal convictions as part and parcel of this insurance coverage action. In short, without the events leading to the plea agreements there would be no coverage action. The United States' attempt to frame the coverage dispute as a sterilized, isolated contract issue divorced from the criminal matter is misplaced. The heart of the coverage dispute largely turns on the provision excluding coverage for criminal acts of which Ayudando became aware. Thus, it stands to reason that the facts obtained through criminal investigation are relevant and proportional to the issues in this case. The Court thus overrules the United States' objections to this interrogatory.

9.  <u>The Court sustains in part the United States' specific objections Interrogatory No. 14.</u>

The United States also objects to interrogatory 14, which asks for all individuals involved in "drafting, updating, or revising the Social Security Administration Program Operations Manual." [Doc. 70-2, p. 10]. The United States objects that the interrogatory is not relevant to any claim or defense and not proportional to the needs of the case. *Id.*

Travelers asserts that this information is relevant because the United States cited the operations manual in its Complaint and apparently relies on it as a basis for coverage. [Doc. 70, p. 21]. As an example of why this is relevant, Travelers explains "to the extent there is any ambiguity in the operations manual, Travelers needs to discover relevant parol or extrinsic evidence regarding the drafting of the manual." *Id.* Travelers further says that the interrogatory is not vague or overly broad because the "operations manual is less than seven pages long and contains only information about bonding and licensing guidelines." *Id.*

The Court agrees in large part with the United States in large part. The interrogatory is overly broad and vague on its face. The relevant portions of the Complaint state that the "Commissioner [of the Social Security Administration] requires that the fee for service

organization be bonded to cover misuse and embezzlement by officers and employees." [Doc. 1, p. 10] (internal citation omitted). Paragraph 69 of the Complaint cites the SSA Program Operating Systems Manual GN 00506.105 whose purpose is "to protect the SSA from financial loss caused by the action or inaction of the organization, or officer(s), or an employee of the organization." *Id.* (internal citation omitted).  Paragraph 69 then states that the "current version of the SSA Program Operating Systems Manual . . . states that the purpose of the bond/insurance requirements is to protect the Representative Payee from financial loss caused by the action or inaction of the organization, or officer(s), or an employee of the organization." *Id.* (internal citation omitted).

The Court recognizes that the operations manual has relevance to the United States' claims based on the allegations above. However, in its present form this interrogatory is not sufficiently tailored to these allegations. Travelers requests every agency officer or employee involved in creation of the manual, which includes minor participants who, for example, may have decided the font size or cover design. The Court sustains the United States' objections that the interrogatory is vague and overly broad. Travelers may rephrase the inquiry to tailor it more closely to the relevant material.

10. <u>The Court overrules the United States' specific objections to Interrogatory No. 15.</u>

The United States also objects to interrogatory 15, which seeks facts in support of the United States' allegation in the Complaint that "Ayudando operated without regard to corporate structure." [Doc. 70-2, p. 10]. Travelers' good faith letter limited the interrogatory to the material and principal supporting facts. [Doc. 70, p. 21]. The United States raised its general objections addressed above and also promised to produce documents "upon entry of an appropriate confidentiality order protecting the privacy interests of Ayudando's clients." *Id.* at 21, 22. The United States also pivots to arguing that the burden of obtaining the requested information is

"substantially the same for either party" because it can be found in document production responsive to Request for Production 2. *Id.* at 22.

Travelers' response is similar to its interrogatory 9 response. Travelers complains that the United States did not state whether it has actually withheld any responsive information and moreover violated Rule 33(d) by responding with a reference to a huge number of documents. *Id.* Travelers adds that Rule 33(d) does not allow the United States to answer a contention interrogatory with document production because "Travelers cannot derive or ascertain the United States' contentions from simply looking at documents." *Id.*

The Court agrees with Travelers. Similar to the previous interrogatory 9 analysis, the United States cannot cite over a million bate-stamped documents and at the same time claim that they comply with Rule 33(d)'s specificity requirements. However, Travelers' blanket statement that Rule 33 prevents a party from answering a contention interrogatory with documents does not convince the Court. Travelers provides no authority besides Rule 33(d), whose plain language appears applicable to contention interrogatories. Given that the United States must isolate which pages it believes responsive to this interrogatory, Travelers should be able to discern the United States' position from a narrower set of documents. Finally, Travelers is again correct that the United States must state whether they are expressly withholding any information on the basis of privilege. *See* Fed. R. Civ. P. 26(b)(5)(A). If the United States is in fact withholding documents until a confidentiality order is entered, the United States may move for one or submit a stipulated order to the Court. Until that time, the Court overrules the United States' objections to this interrogatory.

11. <u>The Court overrules the United States' specific objections to Interrogatory No. 16.</u>

The United States also objects to interrogatory 16, which seeks the principal and material facts (as limited in Travelers' good faith letter) supporting the United States' contention that Moore and Harris were not owners of the Ayudando entities. [Doc. 70, p. 23]. The United States first objects that this question is not relevant to coverage. *Id.* The United States further responds with document production "identical to the production of documents discussed with respect to Interrogatory 15." *Id.*

Travelers once more argues that the inquiry is relevant because Exclusion C of the Policy excludes losses from any misconduct, which could in turn preclude this claim. *Id.* Regarding the United States' document production, Travelers points the Court to its interrogatory 15 response and reraises the same points by reference here. *Id.*

The Court again agrees with Travelers. For the reasons given concerning interrogatory 15, the United States' document production response is inadequate and must be revised. The United States must also state whether it is withholding documents and may move for a confidentiality order if needed. Similarly, for the reasons given in interrogatory 4, the Court treats this interrogatory as relevant to Travelers' defense and therefore proper. The Court thus overrules the United States' objections to interrogatory 16.

### C. Travelers' request for an extension of time is granted.

Travelers requests an extension of time to file a motion to compel regarding the interrogatories the United States agreed to supplement until after those supplemental answers are served. [Doc. 70, p. 23] (interrogatories 1, 6, 8, 11, 12, and 17). The United States says that Travelers did not seek its concurrence and so the request should be denied. [Doc. 75, p. 27]. The United States does not object to an extension for Travelers to compel a response to interrogatory 5 until after coverage is decided. *Id.* However, the United States contends that it did not agree to

supplement interrogatories 6 and 12 and thus does not agree to the extension for them. *Id.* Travelers replies that good cause exists to grant the extension because it learned from the United States' response herein that there was no agreement regarding interrogatory 6 and 12. [Doc. 79, p. 12]. Travelers also states that they attempted to confer via letter but received no response. *Id.*

The Court finds good cause to grant the extension. Travelers' position is simple and appeals to common sense insofar as "Travelers cannot possibly know if a motion to compel is necessary until it receives the United States' supplemental responses and determines whether they are sufficient." *Id.* The Court agrees and grants an extension for Travelers to file a motion to compel for the supplemental responses. Any such motion concerning interrogatories 1, 6, 8, 11, 12, and 17 is due thirty days after the United States serves Travelers with its supplemental responses. Any such motion concerning interrogatory 5 is due by thirty days after coverage is decided.

**D. Attorneys' Fees and Costs**

Under Rule 37(a)(5), the Court finds that Travelers is entitled to attorneys' fees and costs associated with the objections that the Court overruled. The Court further finds that United States is entitled to attorney fees and costs associated with the discovery requests the Court sustained. Within **fourteen days of entry** of this Order, the Court invites Travelers and the United States to submit an affidavit setting forth the fees and expenses incurred attributable to the specific part(s) of the Motion upon which they prevailed. Either party may lodge objections, if any, to the requested fees and expenses within fourteen days of service of the affidavit.

## CONCLUSION & ORDER

For the forgoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Travelers' Motion to Compel [Doc. 70]:

**IT IS THEREFORE ORDERED** regarding the **general objections**:

- The United States' general objection that **interrogatories 3, 4, 7, 9, 10, and 13** are vague and ambiguous due to Travelers' use of clearly defined terms is **OVERRULED**;

- The United States' general objection that **contention interrogatories 2, 3, 4, 15, and 16** are premature is **SUSTAINED IN PART** and **OVERRULED IN PART** and the answers to these interrogatories are due by sixty days before the close of discovery;

- The United States' general objection that **interrogatories 2, 3, 4, 15, and 16** are not in accordance with the Federal Rules of Civil Procedure or the Scheduling Order is **OVERRULED**;

- The United States' general objection that **interrogatories 2, 3, 4, 12, 15, and 16** are overly broad for the use of terms "all facts" and "in detail" and lack of relevant time period is **OVERRULED** because Travelers' appropriately limited these interrogatories in its good faith letter; and

- The United States' general objection that **interrogatories 2, 3, and 4** improperly invade attorney work product is **OVERRULED**.

**IT IS FURTHERMORE ORDERED** regarding the **specific objections**:

- The United States' objections to **interrogatory 4** are **OVERRULED**;

- The United States' objections to **interrogatory 7** are **OVERRULED**;

- The United States' objections to **interrogatory 9** are **OVERRULED**;

- The United States' objections to **interrogatory 10** are **OVERRULED**;

- The United States objections to **interrogatory 14** are **SUSTAINED IN PART and OVERRULED IN PART**;

- The United States objections to **interrogatory 15** are **OVERRULED**;

- The United States' objections to **interrogatory 16** are **OVERRULED**;

**IT IS FURTHERMORE ORDERED** that Travelers' request for an extension of time is **GRANTED**.

**IT IS FURTHERMORE ORDERED** concerning timelines as follows:

- The United States' supplemental contention interrogatory answers (numbers 2, 3, 4, 15, and 16) are due by **sixty (60) days before discovery terminates**;

- The supplemental non-contention interrogatory answers are **due by thirty (30) days after entry of this Order**;

- Regarding interrogatory 5, and any motion to compel is **due by thirty (30) days after coverage is decided**;

- Regarding interrogatories 2, 3, 5, 7, 9, 10, 14, and 16, any motion to compel is **due by thirty (30) days after the United States provides its supplemental responses**.

**IT IS SO ORDERED.**


UNITED STATES MAGISTRATE JUDGE
JERRY H. RITTER